# UNITED STATES COURT OF APPEALS

# FOR THE EIGHTH CIRCUIT

#004866158

19-2808

Juan **CORREA-GUTIERREZ**-Petitoner,

v.

**UNITED STATES** of America-Respondent.

FILED

DEC 26 2019

MICHAEL E. GANS
CLERK OF COURT

ON DIRECT APPEAL FROM THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF NEBRASKA (Omaha Division)

## INITIAL BRIEF OF PETITIONER

Juan Correa-Gutierrez 22397047 Pro-Se

Federal Correctional Institution

1900 Simler Avenue

Big Spring, Texas 79720

RECEIVED

JAN 6 2020

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

# TABLE OF CONTENTS

| | |
|---|---|
| Contents | (i) |
| Table of Authorities | (ii) |
| Jurisdictional Statement | (iii) |
| Issues Presented | (iv) |
| Statement of the Case | 1 |
| Summary Argument | 2 |
| Argument | 3 |
| Conclusion | 6 |
| Certificate of Service | 7 |

Appellate Case: 19-2808    Page: 2    Date Filed: 01/06/2020 Entry ID: 4867863

# TABLE OF AUTHORITIES

Rogers v. United States, 340 U.S. 367(1951)       4

United States v. Clarine, 138 Fed. Appx. 940(9th Cir. 2005)       5

21 U.S.C. § 841       1

21 U.S.C. § 846       1

28 U.S.C. § 1291       (iii)

28 U.S.C. § 1651       (iii) and 6

Fed. R. Crim. P. 7       3 and 6

3B1.1       2 and 5

Appellate Case: 19-2808    Page: 3    Date Filed: 01/06/2020    Entry ID: 4867863

## JURISDICTIONAL STATEMENT

### DISTRICT COURT'S JURISDICTION

The district court from which this appeal is taken had jurisdiction of this action pursuant to 28 U.S.C. § 1651(a). In particular, jurisdiction under this statute was proper because the district court's final Memorandum and Order was entered on July 30, 2019, by the District Judge Smith Camp, by denying petitioner's arguments under Extraordinary Writ of Audita Querela.

### COURT OF APPEALS JURISDICTION

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. In particular, jurisdiction under this statute is proper because this appeal is from a final judgment rendered      in the United States District Court for the District of Nebraska.

Timeliness of petition for review:

This petition for review is timely under Rule 4 of the Federal Rules of Appellate Procedure, because the order appealed, from, was entered on July 30, 2019, and the notice of appeal was filed on July   , 2019.

### APPEALABILITY OF JUDGMENT

The judgment appealed from is "final" within the meaning of 28 U.S.C. § 1291, because it disposes of all claims of all parties to this action.

Appellate Case: 19-2808    Page: 4    Date Filed: 01/06/2020 Entry ID: 4867863

## ISSUES PRESENTED

Whether an indictment can charge a person with 21 U.S.C. § 846, where petitioner is the only named person in the indictment.

Whether the district cour committed an error by enhancing petitoner's offense level by 4, where the district court did not demonstrate the existence of the alleged five co-conspirators.

Whether the district court committed on error by not exercision any discretion pursuant to the All Writs Act.

Appellate Case: 19-2808    Page: 5    Date Filed: 01/06/2020 Entry ID: 4867863

## STATEMENT OF THE CASE

Petitioner's initial indictment was filed on July 15th, 2008 (CR Doc. 1). Petitioner was arrested on July 14, 2008 and the initial appearance with the arraignment was held on July 24th, 2008, (CR Doc. 7) before Magistrate Judge Thomas D. Thalken, and the court appointed Attorney Joseph F. Cross Jr. for petitioner.

A superseding indictment was filed on August 20th, 2008 (CR Doc. 21) as to petitioner. (CR Doc. 21 or Appendix A)

Attorney April L. O'Loughlin was appointed as to petitioner on August 27th, 2008 (CR Doc. 24) and an arraignment to the superseding indictment was held on September 4th, 2008 (CR Doc. 26).

Petitioner was allegedly charged with conspiracy pursuant to 21 U.S.C. § 846 in the initial and superseding indictments and charged with 21 U.S.C. § 841 with possession of methamphetamine with the intent to distribute.

Petitioner's Attorney April put in a Motion for Disclosure of Identity of Information on September 24th, 2008 (CR Doc. 32) and was termed as moot on October 17th, 2008 (CR Doc. 38).

A Motion for Joinder was filed by petitioner's Attorney Robert C. Sigler on October 31st, 2008 (CR Doc. 41).

On February 6th, 2009, the Government's Motions for joinder of defendants: Briones-Hernandez, Correa-Gutierrez, and Orozco-Osbaldo shall be tried in a single trial before Senior Judge Strom (CR Doc. 64) and the Government's Motion to withdraw its motion for joinder in 8:08-cr-266, 8:08-cr-269, and 8:08-cr-409. The Government's Motion for joinder in 8:08-cr-305 was denied as moot.

Petitioner had enter a plea of guilty to Counts I and II of the Superseding Indictment on April 20th, 2009 (CR Doc. or Appendix E) but there was

1

no written plea agreement in this case.

Petitioner was then sentenced on July 31st, 2009 (CR Doc. 91) to a term of 324 months.

Petitioner then sought a Motion to Correct Miscarriage of Justice pursuant to Extraordinary Writ of Audita Querela, or in alternative of Plain Error on July 15th, 2019 (CR Doc.  or Appendix B). The district court denied the Motion on July 30th, 2019 (CR Doc. 157 or Appendix ) as the court saying:

"...will not exercise any discretion under the All Writ Act..." and the district court enter an Order on September 11th, 2019 (CR Doc. 166 or Appendix D).

## SUMMARY OF THE ARGUMENT

Petitioner was enhanced four levels, pursuant to Aggravting Role 3B1.1(a), where petitioner was alleged that he was an organizer or leader of a drug activity.

Before trial the AUSA had informed petitioner that they have witnesses that will testify about petitioner's drug operation. On the morning of trial the AUSA had informed petitioner that they have another witness that was not disclosed to petitioner. Petitioner found that it would be in his best interests to plea guilty, prior to trial.

Anuar Nunez was going to testify for the AUSA that in the year 2006 in the summertime, that he redistributed drugs, unloading drugs from vehicles, and wrapping up money to put in hidden compartments in the vehicles.

Anuar Nunez was arrested in October of 2006. A woman named Maria Tirado, who is the significant other of Anuar Nunez and asked if her assisting law enforcement can inure the benefit of Anuar Nunez. Maria Tirado was going to testify for AUSA that indeed she met petitioner back in 2006 and in the spring of 2008 she became friends with petitioner friend Victor Briores-Hernandez

2

as a primary source of information about petitioner's activities.

Mr. Briones-Hernardez told Miss Tirado that petitioner wasn't paying him enough money to take the risks that he was asked too do.

On July 14th, 2008, the police rallied to serve a search warrants on the house where Victor Briones-Hernandez stayed and where Juan Correa-Gutirrez was seen frequently, often to be there and at the mechanic shop.

People were arrested on the early evening of July 14th, 2008 with a search warrant and no narcotics were found at said place. Miss Tirado suggested to the officers that they look at the residence of Enrique Hurtado-Cervantes who she said was like a son to petitioner and that the drugs may be there.

On the morning hours of July 15th, 2008, at the residence of Enrique Hurtado-Cervantes, ultimately, the police searched if and recovered eight pounds of 90% methamphetamine.

There was also ammunition and a gun found at Juan Orozco-Osbsldo garage. Petitioner was there, observed several times apparently working at the garage in a uniform and as an employee rather than an employer.

Juan Orozco-Osbsldo made the statement to Maria Tirado that he was worried the police were going to come question him and so he had hid the gun with the Italian.

Petitioner is going to argue that the four levels enhancement did not apply, because the AUSA did not prove that Juan Orozco-Osbsldo was working or part of the conspiracy.

## ARGUMENT

Federal Rules of Criminal Procedure 7 (Fed. R. Crim. P. 7), reads in part at Rule 7(c): "...For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant

3

is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a particular DNA profile, as that term is defined in that section 3282."

Now in petitioner's Superseding Indictment it reads in part as: "...JUAN CORREA-GUTIEREZ, aka Armando Valencia Andrade, defendant herein, did knowingly and intentionally combine, conspire, confederate and agree with other persons, both know and unknown to the grand jury,..."(CR Doc. 21 or Appendix  )

The court demonstrated juan Orozco-Osbaldo circumstances in this case that alleged a conspiracy existed. See transcript of Plea Proceeding (TPP) that was held on April 20, 2009 (CR Doc. 77 or Appendix E) at page 12: "Some of it was from Mr. Orozco and some of it was from Mr. Ornelas also known as Victor Briones-Hernandez. The -- the latter was $4,372 in currency and then from Mr. Orozco was a $1,022 in currency, and then from Mr. Hurtado there was $370 seized, and the only other currency was seized from 6819 B Plaza, Apartment 96,and that was $22,455.
        THE DEFENDNT: No. I just want to clarify that the money was -- from where it was taken, Juan Orozco, I had nothing to do with it."

See also Transcript of Sentencing Proceedings (TSP) that was held on July 31, 2008 (CR Doc. 91 or Appendix F) at page 6: "With regard to that, the government has also alleged that because there was ammunition and a revolver found at Mr. Orozco-Osbaldo's garage that that likewise should be attributable to Mr. Correa-Gutirrez. The government has not provided any additional evidence or information that would suggest that Mr. Correa-Gutierrez was aware of that ammunition or the gun that was found at Mr. Orozco-Osbaldo's garage.
        I think that the evidence is also sufficient to the extent that there's no argument that Mr. Orozco-Osbaldo owned that garage. It was his place of business. It was his place of business for name years, and Mr. Carrea-Gutierrez was there, observed several times apparently working at the garage in a uniform and as an employee rather than an employer."

In **Rogers v. United States**, 340 U.S. 367(1951), Jane Rogers was the subject of Questioning by the grand jury and she testified that she had been in possession of the membership lists and dues records of the Party, **Rogers** testified that she had turned them over to another. And for this statement she made to the grand jury and the grand jury knew a conspiracy existed. See 340 U.S. at 375 "Of course, at least two persons are requires to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persond whose names are unknown."

Here in petitioner's case he never admitted that he conspired with Juan

4

Orozco-Osbaldo and the AUSA did not demonstrate that a conspiracy existed between Juan Orozco-Osbaldo and petitioner. All that was said about Juan Orozco-Osbaldo and petitioner was that petitioner was seen working at Mr. Orozco-Osbaldo garage. See TSP at page 10-11, where the govenment said: "They seem to suggest in their objections that it's my theory that Mr. Orozco hid his firearm at -- with Mr. Briones-Hernandez and that's not my theory at all. The -- the reason you enhanced Orozco, to refresh your recollection, is there was ammunition found at the shop on 11th Street, the same shop he -- frequented, there was also ammunition found at Mr. Osbalso's apartment out in West Omaha, and Mr. Orozco made the statement to Maria Tirado that he was worried the police were going to come question him and so he hid the gun with the Italian. Well, Victor Briones-Hernandez is not an Italian."

Petitioner is demonstrating to this court that the conspiracy only involved four participants including petitioner himself. Petitioner's arguing that the four levels does not apply to him because Aggravting Role 3B1.1(a) has to involved five or more participants. Petitioner is arguing that he fall under 3B1.1(c) because it does not describe any participants of five or more.

Petitioner would like this court to have the government prove a conspiracy existed between petitioner and Mr. Orozco-Osbaldo and if the government cannot prove that, petitioner would like to get a 2 level reduction.

As describe above about Mr. Orozco-Osbaldo and petitioner's circumstances, it does not prove that a conspiracy existed and why was it not proving to petitioner, at the plea hearing and sentencing hearing? Petitioner sees that the government waived the argument that there were evidence of a conspiracy.

See also **United States v. Clarine**, 138 Fed. Appx. 940, 942-43(9th Cir. 2005) where it reads as: "Finally, the indictment alleging a conspiracy to have taken place "within the District of Idaho and else where" left an open geographical area. The alleged illegal drug ring could well have extended across and beyond Idaho's borders in uncertain locations. See id. 1295(insufficiently placing the conspiracy "within the District of Arizona and elsewhere").

Finally, the indictment naming "other persons, both known and unknown to the Grand Jury," left an open conspiracy ring. The alleged illegal drug ring could well have included anyone who could have had any involvement in the conspiracy anywhere within the District of Idaho and elsewhere. See id. at 1296.(insufficiently naming "other persons both known and unknowm to the Grand Jury").

5

To properly decide this case, the court must make findings of facts for the critical distinction between petitioner and Mr. Orozco-Osbaldo, that a conspiracy agreement existed or a substantial agreement existed. The government has to prove that an actual agreement existed between the government witnesses statement (hearsay) the was going to be used as a government witness testimony or a surveillance that proves a circumstantial conspiracy existed, not just the fact that petitioner was working at Mr. Orozco-Osbaldo garage.

If the government cannot prove that a conspiracy existed between petitioner and Mr. Orozco-Osbaldo, the 4 level enhancement would be unconstitutional. Also it is unconstitutional to not name petitioner's co-conspirators or to not describe the individuals whose names are unknown. This is a violation of Fed. R. Crim. P. 7(c).

## CONCLUSION

Petitioner would like this court to grant him this remedy as requested above under 28 U.S.C. § 1651. The "Continuation of litigation after final judgment and exhaustion or waiver of any statutory right of review allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice."

Respectfully Submitted this 2-12 day of December 2019

/S/

Juan Correa-Cutierrez 22397047
Federal Correctional Institution
1900 Simler Avenue
Big Spring, Texas 79720

Appellate Case: 19-2808     Page: 11     Date Filed: 01/06/2020 Entry ID: 4867863

## CERTIFICATE OF SERVICE

I, Juan Correa-Gutierrez, hereby certify under penalty of perjury that I have mailed a true copy of the Initial Brief of Petitioner to the Assistance United States Attorney, Robert C. Sigler at 1620 Dodge St., Suite 140C, Omaha, NE 68102-1506, by First Class Mail.

Executed on this 12 day of December 2019.

/s/

Juan Correa-Gutierrez 22397047 Pro-Se
Federal Correctional Institution
1900 Simler Avenue
Big Spring, Texas 79720

Appellate Case: 19-2808     Page: 12     Date Filed: 01/06/2020 Entry ID: 4867863

APPENDIX A

FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

08 AUG 20  PM 4: 14

OFFICE OF THE CLERK



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | 8:08CR267 |
| vs. | ) ) | SUPERSEDING INDICTMENT 21 U.S.C. § 846 21 U.S.C. § 853 |
| JUAN CORREA-GUTIERREZ, a/k/a Armando Valencia Andrade, | ) ) ) | |
| Defendant. | ) | |

The Grand Jury Charges:

## COUNT I

Beginning from an unknown date but at least as early as July 1, 2006, and continuing through the present, in the District of Nebraska and elsewhere, JUAN CORREA-GUTIERREZ, a/k/a Armando Valencia Andrade, defendant herein, did knowingly and intentionally combine, conspire, confederate and agree with other persons, both known and unknown to the grand jury, to distribute and possess with intent to distribute 50 grams or more of methamphetamine (actual), its salts, isomers, and salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 841(b)(1).

In violation of Title 21, United States Code, Section 846.

## COUNT II

As a result of the forgoing offenses, defendant JUAN CORREA-GUTIERREZ, a/k/a Armando Valencia Andrade shall forfeit to the United States any and all property constituting or derived from any proceeds said defendant obtained directly or indirectly as a result of the violations

alleged in Count I of this Indictment and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the violations alleged in Count I of this Indictment, including but not limited to the following:

(A) $22,455.00 in United States currency seized from 6819 B Plaza, Apt, 96, on July 14, 2008;

(B) $370.00 in United States currency seized from Enrique Hurtado on July 15, 2008;

(C) $1,022 United States currency seized from the person of Juan Orozco on July 15, 2008;

(D) $4,372.00 United States currency seized from seized from 1924 South 17 Street on July 14, 2008.

In violation of Title 21, United States Code, Section 853.

A TRUE BILL:

FOREPERSON

JOE W. STECHER
United States Attorney

The United States of America requests that trial of this case be held at Omaha, Nebraska, pursuant to the rules of this Court.

ROBERT C. SIGLER
Assistant U.S. Attorney

APPENDIX B

JUAN CORREA-GUTIERREZ
22397-047
FCI-Big Spring
1900 Simler Ave.
Big Spring, TX 79720

Defendant Pro Se

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA-OMAHA DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　　Plaintiff,<br><br>　v.<br><br>JUAN CORREA-GUTIERREZ,<br>　　　　　Defendant. | Case No. 08CR267<br><br>MOTION TO CORRECT MISCARRIAGE<br>OF JUSTICE UNDER EXTRAORDINARY<br>WRIT OF AUDITA QUERELA, OR IN<br>THE ALTERNATIVE PLAIN ERROR |

COMES NOW Defendant Pro Se, JUAN CORREA-GUTIERREZ (hereinafter "Correa"), respectfully moves this Honorable Court to correct his conviction and sentence pursuant to the writ of error audita querela under statutory law of All Writs Act; 28 U.S.C. § 1651, or alternatively under plain error (Fed.R.Crim.P. 52(b)), and ORDER his immediate release.

### I. BACKGROUND

On August 20, 2008, Correa was indicted by a grand jury with a two Count Superseding Indictment in violation of 21 U.S.C. § 846, for distribution and possession of 50 grams or more of actual methamphetamine, its salts and isomers in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1), and also in violation of 21 U.S.C. §846. Count II of the indictment was related to forfeiture of about $28,000.00 cash recovered, which the Government discovered in different locations, which did not belong to Correa.　A copy of the indictment is appended hereto as Appendix A.

On April 20, 2009, Correa before enpanelling a jury, on the advice of his defense lawyers, pleaded guilty to the Superseding Indictment with no contemplations of 11(c)(1)(1) factors that impact the sentencing guidelines. He just straightforward pleaded guilty and promised that he will cooperate with the Government in its future investigation. Copies of the related part of the guilty plea proceeding are appended hereto as Appendix B.

On July 31, 2009, this Court sentenced Correa to a term of 324 months imprisonment by adjusting his base offense level of 38 to 42 for being an organizer or leader of the underlying conspiracy to distribute methamphetamine. Or in other words, the Court applied a four point enhancement for that purpose. The Court later granted a two point reduction for acceptance of responsibility. The end result was that Correa was sentenced under final offense level of 40 and criminal history of II, because 10 years earlier he was caught with possession of 14 grams cocaine powder, which was for his personal use. Copies of the related portion of the sentencing proceeding are appended hereto as Appendix C.

## II. DISCUSSION

### A. LEGAL STANDARD

#### a. Audita Querela

In United States v. Morgan, 364 U.S. 507 (1954), the Supreme Court painstakingly distinguished a § 2255 motion from the writ process in criminal cases.

> "The contention is made that § 2255 of Title 28 U.S.C., providing that a prisoner in custody may at any time move the Court which imposed a sentence to vacate it if in violation of the constitutional laws of the United States, should be construed to cover the entire field of remedies in the nature of coram nobis [audita querela] in federal courts. We see no compelling reason to reach that conclusion."

Id. at 510.

Indeed, the Supreme Court in Morgan, recognized the availability of the writ, even after the exhaustion of all other remedies.

"Continuation of litigation after final judgment
and exhaustion of waiver of any statutory right
of review, should be allowed through this
extraordinary remedy only under circumstances
compelling such action to achieve justice."

Id. at 252.

The Morgan Court went on to state:

"We know of nothing in the legislative history
that indicates a different conclusion. We do
not think that the enactment of § 2255 is a
bar to this motion..."

Id. at 252.

A writ of error is addressed by the sentencing jurisdiction/court.

United States v. Montreal, 301 F.3d 1127, 1130 (9th Cir. 2002); United

States v. Valdez Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001)(The common

law writ of Audita Querela is available to "fill the interstices of the

federal post-conviction remedial framework." While its uses are limited

in modern times, the writ is available to fill gaps in the current system

of postconviction relief).

In Obado v. New Jersey, 328 F.3d 716 (3rd Cir. 2002), the Third

Circuit Court of Appeals asserted,"the unavailability of habeas corpus

relief does not leave deserving petitioners entirely without recourse

because they may bring claims via Writ of Error." Id. at 718, citing

Sinclair v. Louisiana, 679 F.2d 513, 514 (5th Cir. 1982).

Moreover, where federally protected rights have been invaded, it

has been the rule from the beginnig that courts will be alert to adjust

their remedies so as to grant the necessary relief. Bell v. Hood, 327 U.S.

678, 684 (1946).

b. Plain Error

The Federal Rule of Criminal Procedure 52(b) provides:

A plain error that affects substantial rights may be
considered even though it was not brought to the
court's attention.

3

Appellate Case: 19-2808   Page: 19   Date Filed: 01/06/2020 Entry ID: 4867863

### c. The Fifth Amendment to the U.S. Constitution

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, [...], nor be deprived of life, liberty, or property, without due process of law; [...].

### d. Leadership Role For Upward Departure Of A Sentence

The Government must prove acting in concert with five or more persons, a leadership role for the defendant with respect to those persons, and substantial income or resources derived from the continuing series. Richardson v. United States. 526 U.S. 813, 835 (1999); United States v. Bahena, 223 F.3d 797, 803 (8th Cir. 2000)(A defendant must be an organizor or leader of a criminal activity that involved five or more persons).

## B. APPLICATION OF THE RULE OF LAW TO CORREA

### a. Correa's Indictment Is Defective, Therefore The Trial And Sentencing Court Lost Its Personal And Subject-Matter Jurisdiction Over Him.

The Superseding Indictment **against** Correa is defective, because it charged Correa with conspiracy but Correa is the only defendant in the indictment. See Appendix A. Additionally, there is not asserted how, where, and when Correa violated interstate commerce law, a requirement for any federal indictment. As a matter of fact, all Correa's activities were limited to the State of Nebraska.

It is well established that when an indictment charges a defendant for conspiracy, it has to have more than one defendant. Correa pleaded guilty of conspiracy to distribute methamphetamine, with no co-conspirator in his indictment.

For the above two reasons, Correa's indictment was obtained in violation of his rights under the Fifth Amendment of the U.S. Constitution. It is invalid and should be voided. Any conviction, even by guilty plea

4

to the defective and invalid indictment, is as well in violation of Correa's rights to due process of law, and is void.

### b. Correa's Was Sentenced Under Erroneous Calculation Of His Offense Level After Wrongful Application Of Four Points For His Role As A Leader Of A Conspiracy.

Even if the Court concludes that Correa's Indictment is not defective, which it is, his sentence is still in violation of his constitutional rights and due process.

It is well settled that in order for a defendant to be considered as a leader or organizor of a conspiracy, there should be more than five co-defendants in that conspiracy to apply a four point enhancement of sentence. The Government only introduced two other co-conspirators with Correa at the time of sentencing. Those individuals are: Mr. Orozco-Osbaldo and Mr. Briones-Hernandez, who were also separately sentenced by this Court on different dates.

Accordingly, application of leadership and consideration of a four point increase of offense level at the time of sentencing by this Court is plain error, which affected the substantial rights of Correa, and seriously affects fairness, integrity or public reputation of judicial proceedings. If this four point wrongful enhancement is eliminated from the final offense level of 40, which Correa's original sentence is based on, he should have been sentenced under offense level 36. In other words, his original sentence of 324 months, which Correa received under the range of 324 to 405 months, should be corrected based upon the final offense of level 36, and criminal history of II, to 210-262 months range. This is of course before the two point reduction of the United States Sentencing Commission's Amendment 782, which was announced in 2014, and this Court previously granted to Correa.

5

At present, by correcting Correa's offense level and also applying the above two point reduction, his final offense level should be 34, with a range of 168-210 months incarceration. If the Court continues its lenity toward Correa, it could correct the miscarriage of justice that happened to him at the time of original sentence and order a new sentence of 210 months confinement. This is the case if the Court will not agree with the invalidness of his indictment and order his immediate release as a result of lack of personal and subject-matter jurisdiction over him and his case.

## III.  CONCLUSION

For all the above reasons, Correa respectfully prays for his requested relief(s) under the extraordinary writ of audita querela or plain error. He also prays for any other remedies that this Court deems proper in these circumstances.

## IV.  VERIFICATION

Defendant Juan Correa-Gutierrez, makes a solemn affirmation that the statements in this foregoing Motion, are made as his own personal firsthand actual knowledge, and are true, correct, complete, and not misleading in anyway whatsoever, under penalty of perjury under the law of the United States (28 U.S.C. § 1746).

Movant Correa also certifies under penalty of perjury that the submitted Appendices (A-C), are authenticated, true, and correct copies of the originals.

Respectfully submitted,

Juan Correa-Gutierrez

Dated: July 15 , 2019

6

## PROOF OF SERVICE

I, Juan Correa-Gutierrez, hereby certify under penalty of perjury that I have mailed a true copy of this legal instrument Under Motion To Correct Miscarriage of Justice..., via first class USPS to:

AUSA Robert C. Sigler
U.S. Attorney's Offices
1620 Dodge St.
Suite 1400
Omaha, NE 68102-1506

Executed on this 15 day of July 2019, in the County of Howard, State of Texas.

Juan Correa-Gutierrez

APPENDIX C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:08CR267 |
| vs. | |
| JUAN CORREA-GUTIERREZ, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the Defendant's "Motion to Correct Miscarriage of Justice under Extraordinary Writ of Audita Querela, or in the Alternative, Plain Error," ECF No. 155.

On April 20, 2009, the Defendant Juan Correa-Gutierrez pled guilty to Counts I and II of the Superseding Indictment, charging him with conspiracy to distribute 50 grams or more of actual methamphetamine (Count I) and forfeiture (Count II). Senior Judge Lyle E. Strom sentenced the Defendant on July 31, 2009, to a term of 324 months incarceration, followed by five years of supervised release, on Count I. The Defendant appealed, and his conviction and sentence were affirmed on March 17, 2010. He then submitted a motion under 28 U.S.C. § 2255, asserting ineffective assistance of counsel, and that motion was denied by Judge Strom, and on appeal.

He now seeks relief through the "extraordinary write of audita querela, or in the alternative plain error." The Court infers that the Defendant is asking the Court to exercise its authority under the All Writs Act, 28 U.S.C. § 1651, which states in relevant part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and

principles of law." 28 U.S.C. § 1651(a). The All Writs Act has served as a "legislatively approved source of procedural instruments designed to achieve 'the rational ends of law.'" *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).

The Defendant argues that the Superseding Indictment was defective because it charged him with conspiracy yet named only one Defendant. He also argues that he should not have received an enhancement under the Sentencing Guidelines for being a leader or organizer of the conspiracy, because only two other co-conspirators were named at the time of sentencing and a defendant should not be considered an organizer or leader unless the conspiracy involves at least five co-conspirators.

Following the Defendant's direct appeal, the U.S. Court of Appeals for the Eighth Circuit stated in its opinion: "The District Court did not commit procedural error by applying the aggravating-role enhancement. More than five participants were involved in the criminal activity, and Correa-Gutierrez supplied them with drugs and directed their actions." *United States v. Correa-Gutierrez*, 367 F. App'x 724 (8th Cir. 2010).

The record does not reveal any plain error, and this Court will not exercise any discretion under the All Writs Act to vacate the Defendant's conviction or alter his sentence.

IT IS ORDERED:

1.    The Defendant's Motion to Correct Miscarriage of Justice under Extraordinary Writ of Audita Querela, or in the Alternative Plain Error, ECF No. 155, is denied; and

2.    The Clerk will mail a copy of this Memorandum and Order to the

Defendant at his last known address.

Dated this 30th day of July 2019.

                        BY THE COURT:

                        s/Laurie Smith Camp
                        Senior United States District Judge

3

APPENDIX D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.

JUAN CORREA-GUTIERREZ,

        Defendant.

8:08CR267

ORDER

This matter is before the Court on the Defendant's "Motion for Leave to Proceed In Forma Pauperis," ECF No. 164, on appeal of this Court's Memorandum and Order, ECF No. 157, denying his "Motion to Correct Miscarriage of Justice under Extraordinary Writ of Audita Querela, or in the Alternative, Plain Error," ECF No. 155.

Pursuant to Federal Rule of Appellate Procedure 24, this Court denies the Motion for Leave to Proceed In Forma Pauperis, because:

1. The Defendant has not submitted an affidavit in the detail prescribed by Form 4 of the Appendix of Forms demonstrating his inability to pay or to give security for fees and costs. The Defendant's Affidavit and attachments simply show that he has an available balance in his inmate account of $1,236.48 as of August 29, 2019, and that he had a deposit to his account of $75.75 on August 8, 2019, and withdrawals of $47.60 on August 8, 2019, and $48.00 on August 1, 2019. See ECF No. 165. He acknowledges income from "other sources" over the last twelve months, but does not describe the source, amount, or expected continuance of such income. See ECF No. 164.

2. The Defendant has not stated his claim to an entitlement to redress, nor has he stated the issues that he intends to present on appeal.

3. This Court certifies that the appeal is frivolous and is not taken in good faith.

Accordingly,

IT IS ORDERED:

1.      The Defendant's Motion for Leave to Proceed In Forma Pauperis, ECF

No. 164, is denied; and

2.      The Clerk will mail a copy of this Memorandum and Order to the

Defendant at his last known address, and will notify the U.S. Court of

Appeals for the Eighth Circuit.

Dated this 11th day of September 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge

2

APPENDIX E

```
 1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEBRASKA
 2

 3      UNITED STATES OF AMERICA, )
                                  )
 4              Plaintiff,        )        8:08CR267
                                  )        8:08CR268
 5      vs.                       )
                                  )        Omaha, Nebraska
 6      JUAN CORREA-GUTIERREZ,    )        April 20, 2009
        JUAN OROZCO-OSBALDO,      )
 7                                )        SEALED TRANSCRIPT
                Defendants.       )
 8

 9

10

11

12

13             TRANSCRIPT OF PLEA PROCEEDINGS
           BEFORE THE HONORABLE LYLE E. STROM
14         UNITED STATES SENIOR DISTRICT JUDGE

15

16

17

18
        COURT REPORTER:        Ms. Rogene S. Schroder, CRR, RMR
19                             111 South 18th Plaza
                               Suite 3123
20                             Omaha, NE  68102
                               (402) 661-7383
21

22

23

24
        Proceedings recorded by mechanical stenography, transcript
25      produced with computer.
```

```
 1                    A-P-P-E-A-R-A-N-C-E-S

 2    FOR THE PLAINTIFF:        Mr. Robert C. Sigler
                                Mr. Justin C. Dawson
 3                              Assistant United States Attorneys
                                1620 Dodge Street
 4                              Suite 1400
                                Omaha, NE  68102-1506
 5
      FOR THE DEFENDANT         Ms. Ann C. Addison-Wageman
 6    JUAN CORREA-GUTIERREZ:    Attorney at Law
                                708 West Mission Avenue
 7                              Bellevue, NE  68005

 8                              Ms. April L. O'Loughlin
                                Attorney at Law
 9                              P.O. Box 24268
                                Omaha, NE  68124-0268
10
      FOR THE DEFENDANT         Mr. James W. Crampton
11    JUAN OROZCO-OSBALDO:      Attorney at Law
                                1904 Farnam Street
12                              Suite 200
                                Omaha, NE  68102
13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (At 1:00 p.m. on April 20, 2009, with counsel for the

2     parties and the defendants present, the following proceedings

3     were had:)

4          THE COURT:  We're on the record -- the record should

5     reflect that I have excused the jury until tomorrow morning.

6     I have been advised that the defendant Juan Orozco-Osbaldo --

7     is that --  Have I got the wrong one again?  All right.  It's

8     Juan Correa-Gutierrez has reached a plea agreement with the

9     government and will enter a plea of guilty to, what,

10    Mr. Crampton?  Okay.

11         MS. O'LOUGHLIN:  That would be our client, Judge.

12         THE COURT:  Yeah, I know.  I've been confused from

13    day one on this.  I'll maybe get it straightened out, but he

14    has -- he's going to plead to what?  Count I?

15         MS. O'LOUGHLIN:  Judge, yes.  It's our understanding

16    he will enter a plea of guilty to the superseding indictment.

17    I think there's a -- Count II I think we've already -- is that

18    correct, we've already conceded?

19         MR. SIGLER:  Count II's a forfeiture.

20         MS. O'LOUGHLIN:  Count II's a forfeiture.

21         THE COURT:  Okay.  So he's going to plead guilty to

22    Count I and the forfeiture count -- well, he'll be pleading

23    guilty in effect to the forfeiture count also under these

24    circumstances.

25         MS. O'LOUGHLIN:  Yes, sir.  And then, Judge, as part

1    of the plea agreement --

2          THE COURT:  And bring the microphone towards you

3    because your voice is very soft.

4          MS. O'LOUGHLIN:  It's also our understanding, Judge,

5    that the government has agreed not to file the 851 ringleader

6    proposal after -- in accordance with our client entering a --

7          THE COURT:  I was going to have you recite on the

8    record what the plea agreement is between the parties so why

9    don't we do that at the outset.

10         Mr. Sigler, if you could recite for the record the plea

11   agreement that the parties have reached.

12         MR. SIGLER:  I will, Your Honor.  First of all, there

13   is no written plea agreement.

14         THE COURT:  I understand that.

15         MR. SIGLER:  All this came up this morning.  And the

16   only thing that I think needs to be spread upon the record is

17   that the parties -- that the defendant is going to plead with

18   the agreement between himself through his attorneys and the

19   United States through me that pursuant to Rule 11(c)(1)(C) of

20   the Federal Rules of Criminal Procedure, his sentence be 30

21   years and that that proposal to the Court is meant to obviate

22   all issues concerning role in the offense, acceptance of

23   responsibility, criminal history category and any other

24   factors that may be relevant under the sentencing guidelines.

25         And so if the Court accepts that, it goes without saying

1    that the government would not be filing an information

2    pursuant to 21 U.S.C. 853.  So that -- the simplest way to put

3    it is the proposal is that the defendant pleads guilty to the

4    superseding indictment, and if the Court accepts the proposal

5    of 30 years, that would be his sentence.

6         MS. O'LOUGHLIN:  Judge, may I have a moment to confer

7    with Mr. Sigler?  I think we might have a -- a difference of

8    interpretation on -- on one...

9         THE COURT:  You may confer with counsel.

10         MS. O'LOUGHLIN:  Thank you.  Judge, can we have just

11    a moment?  I think both Mr. Sigler and I were in a little bit

12    of different page about what each of us --

13         THE COURT:  I think as far as Mr. Orozco-Osbaldo is

14    concerned, the commencement of the trial will be -- is

15    continued till tomorrow morning.  The jury's been excused till

16    then.  Mr. Orozco may be returned to -- may be returned to the

17    custody of the marshal and you may be excused.

18         You may stay if you wish, Mr. Crampton, but you are

19    excused also until tomorrow morning at 8 -- at -- well, we'll

20    start picking the jury at nine o'clock in the morning.

21         MR. SIGLER:  Can I have a minute with the marshal for

22    a second?

23         THE COURT:  Yes.  And then you need to have a

24    consultation, I think.

25         MS. O'LOUGHLIN:  May we have just a moment, Judge?

1          THE COURT:  Just let me know.  What'd you need?  A

2     few minutes?

3          MS. O'LOUGHLIN:  Just a few minutes, Judge.

4          THE COURT:  All right.  You may take it.  I'll be in

5     recess then for...

6     (Recess had at 1:06 p.m.)

7     (At 1:52 p.m. on April 20, 2009, with counsel for the

8     parties and the defendant Juan Correa-Gutierrez present, the

9     following proceedings were had:)

10          THE COURT:  Well, I guess initially I need to have a

11     report on where we stand.

12          MS. ADDISON-WAGEMAN:  Judge, I --

13          THE COURT:  Miss Wageman.

14          MS. ADDISON-WAGEMAN:  We -- we've reached an

15     agreement.  We are going to ask the Court, though, to seal

16     these proceedings so that we can move forward from that point.

17          THE COURT:  I have no objection to that.  And these

18     proceedings commencing at this point will be sealed till the

19     end of this particular hearing.

20          Now, will somebody recite for me what the plea agreement

21     is between the parties.

22          MS. ADDISON-WAGEMAN:  Mr. Sigler.

23          MR. SIGLER:  The --  What's going to happen, Judge,

24     is the proposal is that the defendant enters his plea of

25     guilty to the superseding indictment.  There are no

1    11(c)(1)(C) contemplations and there are no agreements on any

2    of the factors that impact the sentencing guidelines.  He's

3    just going to plead guilty.

4         THE COURT:  Miss Wageman, is that an accurate

5    statement or...

6         MS. ADDISON-WAGEMAN:  Your Honor, that is accurate;

7    however, the plea agreement does contemplate some cooperation

8    on the part of Mr. Correa-Gutierrez.  Miss O'Loughlin and I

9    have gone over in depth with him obviously that he's not

10   getting anything today in return for that, that his

11   cooperation may be useful, it may not be useful and he

12   understands that.  So we will be meeting with Mr. Sigler at a

13   later point in time to make arrangements towards that end.

14        MR. SIGLER:  And in response to that, they have

15   indicated that their client wants to be interviewed and may

16   have information that might be useful to law enforcement, and

17   we will happily have that interview and see where it leads,

18   but the -- if you want to call it part of the plea agreement,

19   it is only that there is a possibility that the defendant

20   might qualify at some future date for a consideration of

21   substantial assistance, but there is absolutely no promise of

22   that at all.

23        THE COURT:  Is that a fair statement?

24        MS. ADDISON-WAGEMAN:  That -- that's a fair

25   statement.

1          MS. O'LOUGHLIN:  Yes, sir.

2          THE COURT:  Mr. -- Well, is -- is the correct name

3    Juan Correa-Gutierrez?  Is that correct?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And do you prefer to be called Mr. Correa

6    or Mr. Gutierrez?

7          THE DEFENDANT:  Whatever you like is fine.

8          THE COURT:  Okay.  Let me start with Mr. Correa.

9    It's a little easier for me to handle.  Mr. Correa, I'm going

10   to be asking you some questions here about this and they have

11   to be under oath.  So I want you to understand that the

12   answers you give to my questions will be under oath and,

13   therefore, those answers could later be used against you in a

14   prosecution for perjury, that is, lying under oath, or for

15   furnishing false information to the Court.

16       Do you understand that?

17         THE DEFENDANT:  Yes, I understood.

18         THE COURT:  Now, would you please -- please stand and

19   raise your right hand.

20       (Defendant sworn.)

21         THE COURT:  Now, my first question to you,

22   Mr. Correa, can you tell me how old you are?

23         THE DEFENDANT:  I'm going to turn 47.

24         THE COURT:  All right.  And how much education have

25   you had?

1       THE DEFENDANT:  I finished up till ninth grade in

2   Mexico.

3       THE COURT:  All right.  Are you presently taking

4   medication of any kind for any physical conditions or for any

5   mental or emotional problems?

6       THE DEFENDANT:  No.

7       THE COURT:  Are you presently under the influence of

8   any drugs or alcohol of any kind?

9       THE DEFENDANT:  No.

10      THE COURT:  Are you aware of any reason that you

11  think interferes with or prevents you from understanding the

12  purpose of the hearing we're about to hold?

13      THE DEFENDANT:  No.

14      THE COURT:  All right.  Now, first let me ask you

15  this:  You've heard that recitation of a plea agreement

16  between you and the government which as I understand it is

17  that you are going to plead straight up guilty to Count I of

18  the superseding indictment, and we will proceed with

19  sentencing following the United States Sentencing Guidelines

20  and the statute Title 18, United States Code, Section 3553,

21  which is the guideline which the Court really has to use, and

22  a sentence will be calculated in that manner, and in addition,

23  you are going to be permitted to cooperate with the government

24  and the government after interviewing you will determine what,

25  if any, benefit you ought to receive from that cooperation.

1        Is that your understanding of your agreement with the

2  government?

3            THE DEFENDANT:  Yes.

4            THE COURT:  Now, in reaching that agreement, has

5  anyone forced you in any way or threatened you in any way that

6  causes you to reach that agreement?

7            THE DEFENDANT:  No.

8            THE COURT:  Are you satisfied that your decision to

9  enter a plea of guilty pursuant to that agreement is a

10 voluntary, knowing and understanding decision on your part?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Now, let me get my papers together here.

13 Miss O'Loughlin and Miss Wageman, are you employed or are you

14 court appointed?

15           MS. ADDISON-WAGEMAN:  We're privately retained.

16           MS. O'LOUGHLIN:  Privately --

17           THE COURT:  Privately retained, all right.  And have

18 you been privately retained in this matter since the

19 indictment -- his first appearance before a magistrate judge

20 after return of the indictment?

21           MS. O'LOUGHLIN:  Yes, sir.

22           THE COURT:  All right.  Mr. Correa, as I understand

23 it, Miss Loughlin {sic} and Miss Wageman have represented you

24 since you first appeared before the magistrate judge; is that

25 correct?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, have they been available to discuss

3    with you your right to trial in this case and discuss the

4    trial of the case and your right to enter into an agreement

5    with the government?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you have any objections to the manner

8    in which they have represented you up to this time?

9          THE DEFENDANT:  No.

10         MS. O'LOUGHLIN:  Just for point of classification, he

11   did initially have the public defender on the arraignment of

12   the original indictment.  We were retained after the

13   superseding indictment.  Just so --

14         THE COURT:  Okay.  So you've been retained since

15   about August 8th of last year --

16         MS. O'LOUGHLIN:  Yes.

17         THE COURT:  -- roughly?

18         MS. O'LOUGHLIN:  Yes, sir.

19         THE COURT:  And it's from that period of time to now

20   that I'm talking about.  Do you --  Did you understand that,

21   Mr. --

22         THE DEFENDANT:  Yes.

23         THE COURT:  -- Mr. Correa?  All right.

24      Now, there are two counts in this superseding indictment.

25   The second count is a forfeiture count.  It really rises or

1    falls with Count I.  If you're found guilty of Count I, then

2    the jury would find you guilty of Count II 'cause all the

3    government has to show is that the monies that were involved

4    constituted or were derived from proceeds obtained directly or

5    indirectly as a result of the conspiracy charged in Count I of

6    the indictment, and the -- I think -- I don't know if any of

7    the -- this money was obtained from you.

8         Some of it was from Mr. Orozco and some of it was from

9    Mr. Ornelas also known as Victor Briones-Hernandez.  The --

10   the latter was $4,372 in currency, and then from Mr. Orozco

11   was a $1,022 in currency, and then from Mr. Hurtado there was

12   $370 seized, and the only other currency was seized from 6819

13   B Plaza, Apartment 96, and that was $22,455.

14        By entering a plea of guilty to Count II, you will -- you

15   will be agreeing that all of that -- that you are waiving any

16   right or claim to any of that money, and that as far as you're

17   concerned, it may be forfeited to the United States.

18        Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you have any questions of the Court or

21   of your attorneys at this time regarding that forfeiture

22   count?

23             THE DEFENDANT:  No.  I just want to clarify that the

24   money was -- from where it was taken, Juan Orozco, I had

25   nothing to do with it.

1          THE COURT:  Okay.  Count I is a conspiracy count,

2    Mr. Correa, and in order for a jury to find you guilty of the

3    crime charged in Count I of the indictment, the government

4    would have to prove the elements of that crime beyond a

5    reasonable doubt.

6          And generally those elements are these:

7          Number one, that from on or about -- that on or about

8    July 1, 2006, to July 15 of 2008, during that period of time,

9    two or more persons reached an understanding or came to an

10   agreement to distribute or possess with intent to distribute

11   methamphetamine.

12         Number two, that you either joined in that agreement or

13   understanding when it was first formed or you later learned

14   about it and voluntarily joined in that agreement or

15   understanding.

16         Number three, that at the time you joined in that

17   agreement or understanding, you knew that the agreement

18   involved the distribution or the possession with intent to

19   distribute methamphetamine, and some of these events -- and,

20   fourth, that some of these events or all of them took place in

21   Nebraska.

22         If a jury found you guilty of that conspiracy as charged

23   in Count I, I would also have the jury make a determination as

24   to whether or not the methamphetamine involved was actual

25   methamphetamine or a mixture, and, secondly, I would have them

1   make a determination as to the amount of methamphetamine for

2   which you should be held responsible.

3       If you're found guilty of the crime charged in Count I of

4   the indictment, you are facing a term of imprisonment of not

5   less than ten years nor more than life, a fine of not more

6   than $4 million, or both such imprisonment and fine, a term of

7   supervised release to follow your term of imprisonment of not

8   less than five years and a $100 special assessment.

9       Do you understand those to be the statutory penalties for

10  this crime?

11              THE DEFENDANT:  Yes.

12              THE COURT:  Now, have you visited with your counsel

13  about the application of the United States Sentencing

14  Guidelines to a determination of your sentence?

15              THE DEFENDANT:  Yes.  Yes.

16              THE COURT:  All right.  The Court -- While the

17  guidelines are no longer mandatory, the Court is still

18  obligated to calculate a sentence under the guidelines and --

19  and consult that sentence in arriving at an appropriate

20  sentence for the offense conduct involved.

21      A guideline sentence is determined by calculating two

22  factors; the first is an offense level and the second is a

23  criminal history category.

24      Now, the offense level is determined by the nature of the

25  drug used and the amount of the drug used, and the Court is

1      referred to a particular chapter in the guidelines which

2      considering that drug and the amount of that drug gives the

3      Court a base offense level.

4           Now, there are some additions to that and there may be

5      some subtraction from that base offense level.  For example,

6      if you're a leader or organizer of the offense or a manager of

7      the offense, that would increase your offense level.  It could

8      increase it as much as four levels depending upon your

9      involvement.

10          If there -- if you possessed a gun in connection with

11     the -- this crime, that would increase your offense level.  If

12     anybody was hurt, injured or killed in connection with this

13     conspiracy, that could increase your offense level.

14          There are some factors that also reduce your offense

15     level.  For example, if you had a minor or minimal role in the

16     offense, that could reduce your offense level.  Your

17     acceptance of responsibility can reduce your offense level.

18     And there are other factors that are in there, but once the

19     Court has considered all of those, I arrive at what is known

20     as a final offense level.

21          And then I take a look at your prior criminal history.

22     Convictions for some misdemeanors and for felonies may be

23     counted in arriving at a criminal history category.  When I

24     have determined those two -- that criminal history category

25     and your final offense level, then I go to the guideline -- a

1    grid in the guidelines and for that final offense level and

2    that criminal history category, there is a sentencing range,

3    and it's that sentencing range that I'm obligated to consider

4    in determining your sentence.

5        Do you understand that?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Now, at this time, do you have any

8    questions either of the Court or of your counsel regarding the

9    nature of the crime charged in Count I, the elements of that

10   crime, the statutory penalties for that crime or the

11   calculation and determination of a sentence under the United

12   States Sentencing Guidelines?

13           THE DEFENDANT:  No.

14           THE COURT:  All right.  Now, in entering into this

15   agreement with the government -- or in your decision to enter

16   a plea of guilty in this case -- by pleading guilty, you are

17   going to be waiving certain rights that you have under the

18   Constitution of the United States, and I'm obligated to review

19   those with you now.

20       Do you understand that you have the right to persist

21   in -- that is, continue in your plea of not guilty to these

22   charges and under those circumstances you'd be entitled to a

23   speedy and public trial before a jury selected from citizens

24   here in Nebraska?

25       Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  And did you understand that we are

3     prepared today -- we were prepared today to go forward with

4     the selection of a jury to try this case?  Were you --  You

5     are aware of that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Now, you understand that you have a right

8     to be represented by an attorney at all stages of the

9     proceeding, including the trial, and if you cannot afford a

10    lawyer, the Court would appoint one to represent you?

11         THE DEFENDANT:  Yes.

12         THE COURT:  You understand that during any trial you

13    would have a right to be present here in the courtroom so that

14    you could see each witness produced by the government to prove

15    the charges against you, you'd have a right to hear their

16    testimony and you'd have the right to cross-examine them?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And do you understand that the subpoena

19    power of this Court is available to you?  And by that I mean

20    the power of the Court to compel the attendance of witnesses

21    and the power of the Court to compel the production of

22    documents or other things to be used as evidence, so you could

23    compel the attendance of any person you wanted to testify at

24    trial and you could compel the production of any document or

25    other thing you wanted used as evidence during the trial.

1    Do you understand that?

2         THE DEFENDANT:  Yes.

3         THE COURT:  Now, in a criminal case, the burden is

4    always on the government throughout the trial to prove each of

5    the elements of the crime or crimes charged beyond a

6    reasonable doubt.  There's no burden on you to prove anything.

7    You do not have to prove your innocence.

8         Do you understand that?

9         THE DEFENDANT:  Yes.

10        THE COURT:  And do you understand that the government

11   in presenting its evidence to the jury could not call you as a

12   witness?  You could not be compelled to take the witness

13   stand.

14        THE DEFENDANT:  Yes, I understand.

15        THE COURT:  And do you understand that if you decided

16   you did not want to testify during the trial, at the close of

17   the evidence, I would instruct the jury that they could not

18   consider the fact you did not testify, they could not even

19   discuss that fact in arriving at a verdict?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you understand that under our law

22   you're presumed to be innocent until and unless the government

23   produces sufficient evidence that satisfies all 12 members of

24   the jury that you're guilty beyond a reasonable doubt of each

25   element of the crime or crimes charged?

1          And at the close of the evidence, I would instruct the

2     jury that if after reviewing the evidence they did not believe

3     that the government had met that burden of proof, it would be

4     their duty to return a verdict of not guilty solely on the

5     basis of the presumption of innocence.

6          Do you understand that?

7             THE DEFENDANT:  Yes, I understand.

8             THE COURT:  And you understand that by -- if you

9     enter a plea of guilty, you will be found guilty of the

10    elements of the offense charged without a trial, and you will

11    have given up all of these rights we've been discussing except

12    your right to be represented by a lawyer?

13         Do you understand that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  You understand that if you do plead

16    guilty to these -- this offense, you -- you may be ineligible

17    for any and all federal benefits as provided in the United

18    States Code?

19            THE DEFENDANT:  Yes.

20            THE COURT:  And do you understand that if you've

21    committed this offense as -- as part of a pattern of criminal

22    conduct from which you derived a substantial portion of your

23    income, that may increase your sentence under the advisory

24    sentencing guidelines?

25         Do you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Are you satisfied that your decision to

3    enter this plea of guilty and the waiver of rights which we've

4    been discussing is -- is a voluntary, knowing and -- knowing

5    and understanding decision on your part?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And are you pleading guilty for any

8    reason other than the fact that you are guilty?

9          THE DEFENDANT:  No.

10         THE COURT:  All right.  If I could have the

11   government recite a summary of the evidence that it would use

12   to prove this charge against the defendant, please.

13         MR. SIGLER:  Your Honor, that summary is as follows:

14   If we were to go forward at trial, Anuar Nunez would testify

15   that in the year 2006 in the summertime, basically he formed a

16   relationship with the defendant that involved methamphetamine

17   and -- and that relationship involved Mr. Nunez obtaining

18   methamphetamine from the defendant which he in turn

19   redistributed to a number of customers he had as well as

20   assisting Mr. Correa in other activities involving

21   methamphetamine such as unloading vehicles that had brought

22   methamphetamine into the Omaha area at the direction of

23   Mr. Correa and also wrapping up sums of money to put in hidden

24   compartments in vehicles to be returned to places where --

25   Mr. Nunez knows not where, but he knows it was drug money.

1        Mr. Nunez was arrested in October of 2006.  He's been in

2    jail ever since and is cooperating with the United States

3    after his plea of guilty here in federal court.

4        There's a -- a break in the chronology then for most of

5    2007, but in the latter part of 2007, a woman named Maria

6    Tirado, who is the significant other of Anuar Nunez, came

7    forward, Mr. Nunez had changed attorneys by then, and asked if

8    her assisting law enforcement might inure to the benefit of

9    Mr. Nunez ultimately.

10        She was told that was a possibility and then she began to

11    work for the Omaha police first of all under the direction of

12    Mark Lang, but after he retired in December of 2007 with

13    Officer Edie Andersen, who is fluent in Spanish and was able

14    to get on well with Miss Tirado.

15        Miss Tirado then began to infiltrate the organization at

16    issue here today.  She knew some of the people because she had

17    met them back when Mr. Nunez was still out in 2006.  So

18    through some of those people --  And indeed she'd met -- she'd

19    met Mr. Correa back in 2006 although had no dealings with him

20    at all at that time.

21        But in 2006 -- or 2008 for the first six months, she made

22    many purchases of controlled substances from various

23    individuals and dealt with those individuals.  Those

24    individuals would oftentimes in their drug transactions refer

25    to the defendant by his street name, if you will, Primo

Appellate Case: 19-2808     Page: 52     Date Filed: 01/06/2020 Entry ID: 4867863

1    indicating the narcotics were from Mr. Correa.

2         In the spring of 2008, she, Miss Tirado, became friends

3    with the person who in federal court is known as Victor

4    Briones-Hernandez and became well acquainted with him and

5    Mr. Briones-Hernandez then was Miss Tirado's primary source of

6    information about this defendant's activities.

7         The -- Mr. Briones-Hernandez complained during the

8    course of the conspiracy that Mr. Correa wasn't paying him

9    enough money to take the risks that he was asked to take by

10   guarding drug shipments when they came to town, statements of

11   that nature, clearly implicating Mr. Correa as

12   Mr. Briones-Hernandez's superior in this drug organization.

13        Finally, in the early part of July of 2008, Miss Tirado

14   learned that Mr. Correa had gone to points west to secure a

15   big load for the Omaha area, that he was going to bring it

16   back sometime the weekend of July 12th, 13th or Monday, the

17   14th, was going to leave it with Mr. Briones-Hernandez and

18   return to Mexico because of his daughter's Quinceanera, the

19   celebration when a girl becomes 15 in Mexico.

20        Mr. Briones-Hernandez communicated this information to

21   Maria Tirado who in turn communicated it to Officer Andersen.

22   The police determined to arrest the various individuals who

23   had been selling narcotics to Miss Tirado and to arrest the

24   defendant as well.

25        The -- They did surveillance throughout that weekend.

1   Mr. Correa was not back in town as they could determine, but

2   on the afternoon of the 14th, the -- it was communicated to

3   Miss Tirado that the defendant was back in town with the

4   narcotics in question.  The police rallied to serve search

5   warrants on the house where Victor Briones-Hernandez stayed

6   and where Mr. Correa was seen frequently to -- to frequent --

7   frequently to frequent -- often to be there and as well as the

8   mechanic shop where many of these conspirators did some

9   business down at 11th and Grace.

10      People were arrested on the early evening of July the

11   14th and the search warrants under served.  The narcotics were

12   not found.  Ms. Tirado suggested to the officers that they

13   look at the residence of Enrique Hurtado-Cervantes who she

14   said was like a son to Mr. Correa and that the drugs may well

15   be there.

16      The police knew what vehicle to look for, a Ford

17   Windstar, and sure enough on the early morning hours of the

18   next day, Monday, July 15th, that Windstar was at the

19   residence of Enrique Hurtado-Cervantes.  Ultimately, the

20   police searched it and recovered eight pounds of 90 percent

21   methamphetamine.

22      That's a very short version of what you would hear.

23   There's a lot of corroborating evidence.  I just give you one

24   example.

25      When they searched South 17th Street, for instance, on

Appellate Case: 19-2808    Page: 54    Date Filed: 01/06/2020 Entry ID: 4867863

1   the afternoon of July 14th, Monday, they discovered a uniform

2   traffic citation given to Mr. Correa-Gutierrez in I believe

3   either Wyoming or Utah on the previous day -- Colorado on

4   Sunday thereby corroborating the idea that he was, in fact,

5   out of town and was bringing a load back to Omaha.  So in --

6   in brief, Judge, that's a summary of the government's

7   evidence.

8       THE COURT:  Mr. Correa, you've heard this brief

9   summary of the government's evidence.  Is that a summary of

10  evidence that you and your counsel have reviewed?

11      THE DEFENDANT:  Yes.

12      THE COURT:  How do you plead to Count I of the

13  superseding indictment?

14      THE DEFENDANT:  Guilty.

15      THE COURT:  And how do you plead to Count II of the

16  superseding indictment?

17      THE DEFENDANT:  Count II is the one...

18      THE COURT:  Forfeiture.  That's the forfeiture of the

19  monies.

20      THE DEFENDANT:  Innocent or...

21      MR. SIGLER:  May I make a suggestion?

22      THE COURT:  Yes.

23      MR. SIGLER:  Can you -- Why don't you put the

24  question to him does he claim any interest in those sums.

25      MS. O'LOUGHLIN:  That was going to be the question I

1   was going to ask him.

2          THE COURT:  Okay.  Do you claim any interest in the

3   monies that are described in Count II of the superseding

4   indictment?

5          THE DEFENDANT:  No.

6          THE COURT:  So you're willing that those monies be

7   forfeited to the United States as far as you're concerned?

8          THE DEFENDANT:  It's all right.

9          THE COURT:  Yeah.  Well, I'll accept the defendant's

10  pleas.  I'll find him guilty of the crime charged in Count I

11  of the indictment as well as for the record guilty of the

12  crime charged in Count II of the indictment since a plea of

13  guilty to Count II simply constitutes an acknowledgement that

14  he has no claim or interest to any of the monies described in

15  Count II of the superseding indictment.

16      I find that he is competent to plead, that he understands

17  the nature of the crimes charged, he understands the mandatory

18  minimum sentence of ten years and the maximum sentence of life

19  for the crime charged in Count I of the superseding

20  indictment, and he understands that the monies described in

21  Count II of the superseding indictment will be forfeited to

22  the United States.

23      I find that he understands that he has the right to trial

24  by jury, he has a right to be represented by counsel at all

25  stages, including the trial, and that if he can't afford a

Appellate Case: 19-2808    Page: 56    Date Filed: 01/06/2020 Entry ID: 4867863

1    lawyer, the Court would appoint one to represent him.

2        He understands he has the right to confront and

3    cross-examine the witnesses produced by the government to

4    prove the charges against him and he has the right not to be

5    compelled to testify against himself.

6        He understands that by entering this plea of guilty, he

7    is waiving his right to trial by jury, waiving the other

8    rights we've been discussing during this hearing except his

9    right to be represented by a lawyer.

10       The Court finds that the defendant understands that the

11   answers he's given under oath to my questions may later be

12   used against him in a prosecution for perjury or for

13   furnishing false information.

14       I find that the plea is voluntary, not the result of any

15   force or threats or promises of any kind and that there is a

16   factual basis for the plea.

17       I will order a presentence investigation.  When that is

18   complete, a report will be prepared.

19       A copy of that report will be made available to you,

20   Mr. Correa.  If you have any objections to the content of the

21   report, I'm going to ask that you take those up first with the

22   probation officer.  If you're not satisfied with the probation

23   officer's response, you may bring them to my attention.  I

24   will resolve your questions or exceptions before sentencing.

25       Do we have a sentencing order?

1               COURTROOM DEPUTY:  Yeah, I gave it to you earlier.

2               THE COURT:  Sentencing is scheduled for July the

3    10th, 2009, at 9:30 a.m. in this courtroom.  An order on

4    sentencing schedule to that effect will be entered today and

5    forwarded to counsel.

6         Anything further at this time, Mr. Sigler?

7               MR. SIGLER:  No, sir.

8               MS. ADDISON-WAGEMAN:  No, Your Honor.

9               THE COURT:  Miss Wageman or -- or Miss -- you know

10   what I mean.

11              MS. O'LOUGHLIN:  Nothing further, Judge.

12              THE COURT:  I'm sorry.  All right.  All right.  The

13   defendant then is remanded to the custody of the United States

14   Marshal pending sentencing in this matter.  Counsel may be

15   excused.

16        (Adjourned at 2:27 p.m.)

17

18

         I certify that the foregoing is a correct transcript from
19   the record of proceedings in the above-entitled matter.

20

              s/Rogene S. Schroder_          July 14, 2009
21            Rogene S. Schroder, RMR, CRR         Date

22

23

24

25

APPENDIX F

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEBRASKA
 2

 3      UNITED STATES OF AMERICA, )
                                  )
 4             Plaintiff,         )      8:08CR267
                                  )
 5      vs.                       )      Omaha, Nebraska
                                  )      July 31, 2009
 6      JUAN CORREA-GUTIERREZ,    )
                                  )
 7             Defendant.         )

 8

 9                 TRANSCRIPT OF SENTENCING PROCEEDINGS
                    BEFORE THE HONORABLE LYLE E. STROM
10               UNITED STATES SENIOR DISTRICT JUDGE

11

12                      A-P-P-E-A-R-A-N-C-E-S

13      FOR THE PLAINTIFF:        Mr. Robert C. Sigler
                                  Assistant United States Attorney
14                                1620 Dodge Street
                                  Suite 1400
15                                Omaha, NE  68102-1506

16      FOR THE DEFENDANT:        Ms. Ann C. Addison-Wageman
                                  Attorney at Law
17                                708 West Mission Avenue
                                  Bellevue, NE  68005
18
                                  Ms. April L. O'Loughlin
19                                Attorney at Law
                                  P.O. Box 24268
20                                Omaha, NE  68124-0268

21

22      COURT REPORTER:           Ms. Rogene S. Schroder, CRR, RMR
                                  111 South 18th Plaza
23                                Suite 3123
                                  Omaha, NE  68102
24                                (402) 661-7383

25         Proceedings recorded by mechanical stenography,
        transcript produced with computer.
```

```
 1          (At 9:30 a.m. on July 21, 2009, with counsel for the
 2     parties and the defendant present, the following proceedings
 3     were had:)
 4               THE COURT:  All right.  You may call the docket.
 5               COURTROOM DEPUTY:  8:08CR267, Juan Correa-Gutierrez.
 6               THE COURT:  You are Juan Correa-Gutierrez?
 7               THE DEFENDANT:  Yes, sir.
 8               THE COURT:  And you -- all right.  Well, Miss
 9     O'Loughlin and Miss Addison, if you could make your
10     appearance, please.
11               MS. ADDISON-WAGEMAN:  Judge, Ann Addison-Wageman
12     appearing on behalf and with the defendant Juan
13     Correa-Gutierrez.
14               MS. O'LOUGHLIN:  Good morning, Your Honor.  April
15     O'Loughlin here with Mr. Gutierrez.
16               THE COURT:  Mr. Sigler.
17               MR. SIGLER:  Your Honor, Robert Sigler for the United
18     States.
19               THE COURT:  The matter is before the Court today for
20     sentencing.  On April the 20th of this year, the defendant
21     entered a plea of guilty to Counts I and II of a two-count
22     superseding indictment.
23          Count I charged that beginning from an unknown date but
24     at least as early as July 1 of 2006 and continuing through the
25     present, which would have been the date of the filing of the
```

1   indictment, here in Nebraska, the defendant knowingly,

2   intentionally conspired and agreed with other persons to

3   distribute or possess with intent to distribute actual

4   methamphetamine in violation of the laws of the United States.

5      Count II is a forfeiture count. That matter will be

6   handled separately and not be before the Court today.

7      The Court accepted the plea at the time of the hearing on

8   April the 20th. A revised presentence report has been

9   prepared. The government has accepted and adopted that report

10   as reflected by filing number 89.

11      The defendants have filed an objection to the report,

12   that's filing number 87, and as I read their objections,

13   they're objecting to the firearm enhancement, the failure to

14   give the defendant credit for acceptance of responsibility and

15   for the enhancement due to his role in the offense.

16      Miss Addison-Wageman, does that accurately reflect the

17   objections of the defendant to the presentence -- the revised

18   presentence report?

19      MS. ADDISON-WAGEMAN: It does, Your Honor.

20      THE COURT: Mr. Correa, have you received a copy and

21   had translated for you the revised presentence report?

22      THE DEFENDANT: Yes.

23      THE COURT: Have you had a chance through a

24   translator to discuss that with your counsel?

25      THE DEFENDANT: Yes.

```
 1          THE COURT:  Are you satisfied that you understand the
 2     content of that report?
 3          THE DEFENDANT:  Yes.
 4          THE COURT:  Other than the objections which your
 5     counsel has noted, do you have any objections or exceptions to
 6     the report?
 7          THE DEFENDANT:  No.
 8          THE COURT:  The Court finds that the defendant has
 9     received a copy of the revised presentence report, that it has
10     been translated for him, that through an interpreter he's had
11     an opportunity to discuss the report and its contents with his
12     counsel, that he is satisfied that he understands the content
13     of the report, and that he has no objections or exceptions to
14     the report.
15          Now, before taking -- before taking up the objections,
16     I'm going to first just recite what the probation officer has
17     determined.  The Court --  The probation officer has found
18     that the base offense level is 38, that there's an enhancement
19     for possession of a firearm of two offense levels, an
20     enhancement based upon his role in the offense of four offense
21     levels resulting in an adjusted offense level of 44, that he
22     is not -- he is not getting any credit for acceptance of
23     responsibility, and this results in a total offense level of
24     44, a criminal history category of II which under the
25     guidelines would call for a life sentence.
```

1    The statutory provisions for this crime are ten years to

2    life.  If released from prison, he's subject to a term of

3    supervised release of five years, a fine of two -- he is

4    subject in addition to imprisonment a fine of 25,000 to $4

5    million and a $100 special assessment.

6         So let's take up your objections first and we'll take --

7    the first one is the possession of a firearm.

8         Which of you are going to argue that point for me?

9         MS. ADDISON-WAGEMAN:  Judge, I will.  Judge, the

10   government asserts that Mr. Correa-Gutierrez should be given a

11   level two enhancement for his possession of the firearm and

12   further alleges that the enhancement should be given because

13   the firearm was found at the Elm Street residence where the

14   government alleges that Mr. Correa-Gutierrez resided.

15        If the Court will note, in fact, Victor Briones-Hernandez

16   also resided at that residence as a -- and he's a co-defendant

17   in this matter and that nine millimeter handgun, such as it

18   was, was found in Mr. Briones-Hernandez's room within a --

19   contained within a closet.

20        There was no venue located during the search and seizure

21   of that residence particularized in that bedroom where

22   Mr. Victor Briones stayed, there's no dispute that that

23   particular bedroom was Mr. Victor Briones's bedroom, and

24   there's no dispute that Mr. Correa Hernandez -- that

25   Mr. Correa-Gutierrez did not occupy that bedroom.

1    With regard to that, the government has also alleged that

2    because there was ammunition and a revolver found at

3    Mr. Orozco-Osbaldo's garage that that likewise should be

4    attributable to Mr. Correa-Gutierrez.  The government has not

5    provided any additional evidence or information that would

6    suggest that Mr. Correa-Gutierrez was aware of that ammunition

7    or the gun that was found at Mr. Orozco-Osbaldo's garage.

8    I think that the evidence is also sufficient to the

9    extent that there's no argument that Mr. Orozco-Osbaldo owned

10   that garage.  It was his place of business.  It was his place

11   of business for many years, and Mr. Correa-Gutierrez was

12   there, observed several times apparently working at the garage

13   in a uniform and as an employee rather than an employer.

14   We don't think that the -- the facts regarding the

15   firearm enhancement is sufficient to support the level two

16   enhancement regarding the firearm, and we feel that to that

17   extent Mr. Correa-Gutierrez was not charged with possession of

18   the firearm, and Mr. Briones-Hernandez was -- likewise a

19   co-defendant was given a two-level enhancement upward for his

20   possession of the firearm, so we just don't think that that

21   applies in this situation to Mr. Correa-Gutierrez.

22   THE COURT:  All right.  And then the -- the next

23   issue would be the acceptance of responsibility.  You want to

24   address that now?

25   MS. ADDISON-WAGEMAN:  Judge, our position is that the

1   government has somehow treated Mr. Correa-Gutierrez

2   differently than the co-defendant Orozco-Osbaldo.  In -- in

3   fact, the -- the Court saw fit in its discretion to grant

4   Mr. Orozco-Osbaldo a reduction -- level two reduction for his

5   acceptance of responsibility after the government had already

6   proceeded two to three days in trial in this matter.

7        Conversely, Mr. Correa-Gutierrez -- although the jury had

8   been called in, we did not begin opening statements, we did

9   not start trial, and, in fact, Mr. Correa-Gutierrez found that

10  it was in his best interests -- after the government had told

11  us that morning of trial that they had another witness that

12  they had not disclosed to us, that changed the dichotomy of

13  the decision-making in regard to whether our client found it

14  would be in his best interests to either plead or move forward

15  and go to trial.

16       And, in fact, Mr. Correa-Gutierrez did decide that it was

17  in his best interests to plead prior to the trial starting and

18  we think he should be given the acceptance of responsibility

19  as was his co-defendant Mr. Orozco-Osbaldo.

20            THE COURT:  And, finally, the adjustment for role in

21  the offense.

22            MS. O'LOUGHLIN:  Your Honor, I'm going to argue that

23  if that's --

24            THE COURT:  All right.

25            MS. O'LOUGHLIN:  -- okay with the Court.  Judge, it's

1  our position -- and specifically with our objections, it was

2  our understanding that that was part of a plea agreement.  We

3  did receive a transcript, so in all fairness to the

4  government, that was not part of the plea agreement so with

5  respect to --

6          THE COURT:  There was no plea agreement, though.

7          MS. O'LOUGHLIN:  That is correct, Your Honor.  There

8  were some prior discussions regarding our client's adjustment

9  for the role in the offense, but when it came to an actual

10 plea agreement on the record, there was not, so we still -- so

11 I wanted to just address our objections that we outlined in

12 the presentence investigation.

13      Judge, it's still our position, though, that

14 Mr. Correa-Gutierrez should not be given such a four-level

15 enhancement for an adjustment.  If, in fact, the Court --

16 Again, I'm going to piggyback upon what my counsel said.  The

17 government somehow wants to separate out Mr. Orozco-Osbaldo

18 and Mr. Correa-Gutierrez.

19      Judge, clearly and as the plea reflects, they were

20 involved in the distribution of methamphetamine; however,

21 Mr. Orozco-Osbaldo was just as involved as

22 Mr. Correa-Gutierrez was.  In fact, at the time of his arrest

23 and the time of the warrant, he had large amounts of cash,

24 large amounts of ammunition.  All of the distribution and sale

25 of the narcotics largely involved Mr. Orozco-Osbaldo.

1          The government did not seek such a ringleader enhancement

2     with respect to them, so why they're seeking such an

3     enhancement with Mr. Correa-Gutierrez. He's not listed on any

4     of the direct transactions involving drugs. There were no

5     large amounts of cash. No weapons found with him. So it's

6     our position, Judge, that the Court should not treat these two

7     individuals differently and that Mr. Correa-Gutierrez should

8     not be given a four-level enhancement.

9          THE COURT: Mr. Sigler, it's your turn.

10          MR. SIGLER: Thank you, Your Honor. I'll address

11     each of the three objections individually and then close with

12     a more general statement. As to the firearm, Your Honor, the

13     defendants -- or the defendant in -- in their objections --

14     their written objections, they got a couple things wrong.

15          What -- what -- what the facts in this case show is that

16     there is a firearm -- an actual firearm seized at 1724 South

17     17th Street on -- the day of the search is July the 14th.

18     There's no doubt that that's the primary residence of Victor

19     Briones-Hernandez.

20          THE COURT: I gave him -- I gave him --  Have we

21     sentenced him?

22          MR. SIGLER: Yes.

23          THE COURT: I gave him a two-level enhancement.

24          MR. SIGLER: Absolutely. Yeah. And there's also no

25     doubt that that was the house that they were watching that day

1   because they knew the load was coming in and that was the

2   house that this defendant went to from the shop, and it's the

3   same house that in 2006 when Anuar Nunez was working for the

4   defendant, they unloaded dope at that house.

5       It -- it -- it's true as they point out in their brief

6   that Mr. Correa-Gutierrez spent a lot of time living at 1908

7   Elm Street, but he also had direct ties with 1724 South 17th

8   Street because that's where the dope generally came into and

9   left from.

10      The probation office in their response to the objection

11  points out that it's certainly reasonably foreseeable to the

12  head of the conspiracy that -- that Mr. Briones-Hernandez is

13  going to have a gun there.  You'll recall

14  Mr. Briones-Hernandez complained to Maria Tirado that he had

15  to guard the dope for Mr. Correa-Gutierrez at the house on

16  17th Street and that Mr. Briones-Hernandez felt that

17  Mr. Correa-Gutierrez was not paying him enough money to do

18  that.  So that firearm I think is -- is -- is readily

19  attributable to this defendant for the enhancement.

20      The fact that we didn't charge him with -- with specific

21  gun crimes means nothing under the guideline calculations, and

22  the other thing that I need to correct is you also enhanced

23  Mr. Orozco-Osbaldo's sentence -- guideline calculation for a

24  firearm.

25      They seem to suggest in their objections that it's my

1    theory that Mr. Orozco hid his firearm at -- with

2    Mr. Briones-Hernandez and that's not my theory at all. The --

3    the reason you enhanced Orozco, to refresh your recollection,

4    is there was ammunition found at the shop on 11th Street, the

5    same shop he -- he frequented, there was also ammunition found

6    at Mr. Osbaldo's apartment out in West Omaha, and Mr. Orozco

7    made the statement to Maria Tirado that he was worried the

8    police were going to come question him and so he had hid the

9    gun with the Italian. Well, Victor Briones-Hernandez is not

10    an Italian.

11        So there were two guns in play. One of which we found on

12    17th Street. One of which Mr. Orozco disposed of and you --

13    you did enhance his guideline calculation. So I don't think

14    that there's any basis for not finding that -- the enhancement

15    for firearm possession for this defendant.

16        THE COURT: I meant to go back and -- and look at --

17    and I forgot to do it yesterday. What was the sentence I gave

18    Orozco?

19        MR. SIGLER: Two ten.

20        THE COURT: Okay. And -- and Briones? Do you

21    remember?

22        MR. SIGLER: He maybe not -- he got -- he got a

23    little less, didn't he? Two -- No, I don't think he did. I

24    think he got 240. I think Mr. Briones-Hernandez got 240,

25    Judge.

1    So that's my -- that's my presentation on the firearm.

2    Now, next and -- and quickly, I didn't treat Mr. Orozco any

3    different on acceptance of responsibility.  I urged you not to

4    give him two levels, and you felt that you should, and so it's

5    kind of hard for me to say today that you shouldn't.

6         THE COURT:  And I've decided I'll give him acceptance

7    of responsibility.

8         MR. SIGLER:  I can't argue that.  I mean, sauce for

9    the goose time.

10        The final thing, though, Judge is adjustment for role in

11   the offense.  Miss O'Loughlin eloquently argues that we ought

12   to look at this defendant the same as Mr. Orozco and

13   Mr. Orozco didn't get an adjustment.  That's just -- The --

14   the facts are totally different.

15        The facts are that as early as 2006 this defendant was

16   bringing large loads of dope into Anuar Nunez's shop in 2006.

17   We didn't have any Mr. Orozco back then.  Anuar Nunez had a

18   mechanic shop and that's where the dope was coming in in 2006.

19   So that's one person he supervised.  Then Nunez was caught and

20   went to prison.

21        Victor Briones-Hernandez was the guy guarding the dope

22   for him in 2008 at the house on 17th Street and complaining

23   because he wasn't paying him enough.  That's two people he

24   supervised.

25        The dope itself was found on the early morning hours of

1   July 15th at Mr. Hurtado's house in South Omaha where the

2   Windstar was parked.  Mr. Hurtado, who Maria Tirado said the

3   defendant treated like a son and who had worked in that

4   butcher shop over on 17th and Vinton, and he -- so he was --

5   he -- that's the place the dope was actually found that day.

6   That's three people working for the defendant.

7       Mr. --  The -- the case is rife with references by people

8   like Gabriel Chaparro and Mr. Orozco that the dope that

9   they're selling Miss Tirado in those individual transactions

10  came from Primo, this defendant.  There's no doubt at all that

11  this is the guy who for two -- from 2006 at least, that's when

12  we know about it, till July of 2008 was bringing large

13  quantities of very pure methamphetamine into this town and

14  having other people distribute it for him.  So there is

15  certainly some reason to -- evidentiary reason to find that he

16  is a manager, an organizer, a leader in this conspiracy.

17      I want to close then by just pointing out that -- from

18  the transcript of what happened on his plea date of April the

19  20th.  We started out you'll recall in the early afternoon and

20  I was asked to recite what was going on.  And I said -- if I

21  can find what I said here -- when we first started, I'm

22  quoting myself, The only thing that I think needs to be spread

23  upon the record is that the parties -- that the defendant is

24  going to plead with the agreement between himself through his

25  attorneys and the United States through me that pursuant to

1   Rule 11(c)(1)(C) of the Federal Rules, his sentence be 30

2   years and that that proposal to the Court is meant to obviate

3   all issues concerning role in the offense, acceptance of

4   responsibility, criminal history category and any other

5   factors that may be relevant under the sentencing guidelines.

6        Then that was not the -- their understanding and we had

7   about an hour recess. And then we came back, and as Miss

8   O'Loughlin has pointed out, we began anew with the recitation

9   that there was absolutely no plea agreement.

10        I -- I -- I quote myself there for this reason: With the

11   acceptance of responsibility, I believe his criminal -- and --

12   and -- but overruling the other objections, I believe his

13   criminal -- or his level gets down to 41 or maybe 42

14   depending on --

15            THE COURT:  Forty-two.

16            MR. SIGLER:  Forty-two?  Well, I didn't look at 42.

17   Is that 360 to life?

18            THE COURT:  No.  It's -- yes, it's 360 to life.

19            MR. SIGLER:  All right.  And so is 41, I think, is

20   360 to life.  And if you give him the low end of that

21   guideline range, you're giving him 30 years.  That's the 30

22   years that I as -- on behalf of the United States thought was

23   appropriate back on April 20th, I still do, and so that's what

24   I urge you to sentence the defendant at.

25            THE COURT:  That pretty much handles your allocution

```
 1    with respect to --
 2              MR. SIGLER:  It does.
 3              THE COURT:  -- sentence also.
 4        Well, let me rule on these objections.  Number one, I am
 5    going to sustain the objection to the failure to give the
 6    defendant credit for acceptance of responsibility.  I think
 7    I've got to be consistent in the way I've treated these
 8    people, and it -- he certainly pled before Mr. Orozco did, and
 9    so for that reason if Mr. Orozco was entitled to a two-level
10    reduction, I think the defendant also is and so I will grant
11    that.
12        With respect to the possession of the firearm, I've read
13    through all that information again, and I've concluded that
14    I'm going to grant that objection as to possession of the
15    firearm.
16        I'm going to overrule the objection as it relates to his
17    role in the offense.  I think that the defendant was the
18    primary -- was the leader of this group and that he did
19    supervise the other persons that are involved sufficiently
20    as -- so as to invoke that adjustment -- four-level
21    adjustment.
22        So with those findings, the Court now adopts the revised
23    presentence report as I have modified it and I accept the
24    facts set forth therein as my findings of fact for purposes of
25    sentencing.
```

1       I find that the base offense level is 38.  He receives an

2    upward adjustment of four offense levels for his role in the

3    offense resulting in a adjusted offense level of 42.  He

4    receives credit for acceptance of responsibility.  That's a

5    two=level downward adjustment.  This results in a total

6    offense level of 40, a criminal history category of II, and a

7    sentencing range of 324 to 405 months.  The statutory

8    provisions are ten years to life.

9       He's subject to a term of supervised release of up -- of

10    not -- of not more than five years -- or not less than five

11    years I guess it is, probation of $25,000 -- or, pardon me, a

12    fine of 25,000 to $4 million and a special assessment of $100.

13    So with those findings then, I may proceed with

14    sentencing as far as the government is concerned.  And you

15    have allocuted with respect to that; is that right?

16       MR. SIGLER:  I've said my piece, Judge.

17       THE COURT:  All right.  Is there any reason then from

18    the defendant's standpoint that we shouldn't proceed with

19    sentencing?

20       MS. O'LOUGHLIN:  No, Your Honor.

21       THE COURT:  All right.  I'll hear from whichever of

22    you is going to speak on behalf of Mr. Correa.

23       MS. O'LOUGHLIN:  Your Honor, we would just ask that

24    you sentence Mr. Correa to the low end of that guideline

25    range.  Obviously, he's looking at a significant amount of

1     time.  I don't think anymore purpose is served by giving him

2     the high end of the guideline range.  Obviously, at 324 months

3     he's looking at a significant amount of time, so we just

4     request that you -- that that's the sentence that the Court

5     impose and gives him credit for time since he's been

6     incarcerated.

7           THE COURT:  All right.  Mr. Correa, is there anything

8     you'd care to say before the Court -- Court imposes sentence?

9           THE DEFENDANT:  No.  All I would want to say and can

10    say is to apologize if I have offended this country.  That's

11    all I would want to say.

12          THE COURT:  Okay.  Well, I reviewed all of this and

13    some of the record that -- that was also prepared at the time

14    we commenced the trial of this case and subsequent to which

15    Mr. Correa concluded to enter a plea of guilty before we

16    started picking a jury.

17     We're dealing here with substantial amounts of

18    methamphetamine.  I think far more than -- even than is used

19    in trying to calculate a sentence under the guidelines.  The

20    guidelines, of course, are only advisory to the Court.  It's

21    just one of the many factors that the Court must consider.

22     I am obligated under Section 3553(a) of Title 18 to

23    consider the nature and circumstances of the offense and the

24    history and characteristics of the defendant.  They're pretty

25    well --  All of that is set forth in the revised presentence

1   investigation report.

2       As I've indicated many times, this trading and -- that we

3   have going on now in methamphetamine -- the introduction of

4   almost pure methamphetamine into the United States from Mexico

5   is -- is a very, very serious offense.  It's causing serious

6   problems in this country.  It's the most destructive drug

7   that's available on the market today in my opinion, and

8   it's -- it's a drug that if people are to feel like they need

9   to become involved in its use or distribution can expect the

10  severe sentences from this Court for that type of conduct.

11      And the only way that we're going to provide just

12  punishment for the offense and respect for the law is to treat

13  it that way.  A sentence needs to protect the public from

14  further crimes of the defendant.  Obviously, a substantial

15  sentence will do that.  And -- and such a sentence should

16  afford adequate deterrence to criminal conduct.

17      And so in considering all of those factors, I -- it will

18  be the sentence of the Court that the defendant be committed

19  to the custody of the Bureau of Prisons for a term of 324

20  months.  He will receive credit for time that he's been in

21  custody since July 14, 2008.

22      Upon the completion of that sentence, he'll be placed

23  upon supervised release for a term of five years subject to

24  the standard terms and conditions of supervised release

25  applicable in this district and to certain special terms and

Appellate Case: 19-2808    Page: 77    Date Filed: 01/06/2020 Entry ID: 4867863

1 conditions which I will recite in a few moments.

2   Probation recommends that no fine be imposed.  Having

3 reviewed the revised presentence investigation report, I'm

4 satisfied that that's an appropriate recommendation and the

5 Court accepts it.  No fine will be imposed on the defendant as

6 part of his sentence.

7   I will impose a special assessment of $100.  That's due

8 and payable immediately to the clerk of this court.  If the

9 defendant is unable to pay it at this time, he will make

10 payment on it out of any funds that he may earn while he's

11 incarcerated and from any other funds that become available to

12 him while he's incarcerated to the extent of 25 percent of

13 such earnings and/or other funds until the $100 has been paid

14 in full.

15   If by chance any portion of that special assessment has

16 not been paid at the time he's released from confinement, the

17 balance will be due and payable within 15 days of his release

18 from confinement, and that's due and payable into the office

19 of the clerk of this court.

20   As this is a felony conviction, the Bureau of Prisons

21 shall obtain a DNA collection from the defendant while he's in

22 confinement.  As a term of his supervised release, if such a

23 sample is not obtained from the defendant while he's

24 incarcerated, then he will cooperate with his probation

25 officer in providing such a sample.  All of this in accord

with Public Law 108-405.

The provisions of Title 18, United States Code, Section 3583(d) regarding drug testing within 15 days of release on supervised release and on two periodic occasions thereafter is suspended until further order of the Court as it appears the defendant will be deported upon the completion of this sentence.

The defendant, if he is placed on supervised release, shall submit his or her person, residence -- pardon me, shall submit his person, residence, office or vehicle to a search conducted by a United States Probation Officer at any time. Failure to submit to such a search may be grounds for revocation and the defendant is obligated to advise and warn other residents of the premises that he occupies that those premises are subject to a search pursuant to this condition.

He shall comply with all of the rules and regulations of the Bureau of Immigration and Customs Enforcement. If he's deported, he shall not re-enter the United States or reside herein without the expressed written permission of the Secretary of the United States Department of Homeland Security.

Finally, he shall report to the United States Probation Office for this district between the hours of 8 a.m. and 4:30 p.m., that's on the concourse level of this building, within 72 hours of his release from confinement if he's not

1    deported, or if deported, within 72 hours of his return to the

2    United States.

3         Mr. Correa, you have a right to appeal to the United

4    States Court of Appeals for the Eighth Circuit the findings

5    which the Court has made today and the sentence which I've

6    imposed.  That appeal, if it's to be taken, must be taken by

7    filing a notice of appeal with the clerk of this court within

8    ten days of the date that the Court files a written judgment

9    and committal order reflecting this sentence.

10        As your counsel is retained, they, of course, will be

11   available to assist you in the preparation and filing of that

12   notice of appeal; however, if you cannot afford to pay for the

13   costs of appeal, you would have the right to appeal in forma

14   pauperis, that is, without paying the costs of appeal.

15        If -- if you seek to proceed in that way, you must file

16   an application with this Court together with an affidavit

17   setting forth your financial situation asking the Court to

18   permit you to appeal in forma pauperis.  If I grant that

19   motion, then you have a right to have an attorney represent

20   you on appeal, but if you want an attorney to represent you on

21   appeal under those circumstances, you must file an application

22   with the Court for appointment of counsel.

23        So do you understand the time within which an appeal must

24   be taken?

25                THE DEFENDANT:  Yes.

1    THE COURT:  And do you understand these other rights

2    of appeal as I've explained them to you?

3    THE DEFENDANT:  Yes.

4    THE COURT:  Anything further?  Anything further from

5    counsel?

6    MS. O'LOUGHLIN:  No, sir.

7    THE COURT:  The defendant is remanded to the custody

8    of the United States Marshal for execution of sentence and

9    counsel may be excused.

10    (Adjourned at 10:04 a.m.)

11

12

13

14    I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

15

16    s/Rogene S. Schroder                    September 9, 2009
     Rogene S. Schroder, CRR, RMR                    Date

17

18

19

20

21

22

23

24

25